# EXHIBIT "A"
# Part 2

COURT'S ORIGIN

## IN THE CIRCUIT COURT OF CHILTON COUNTY, ALABAMA

| | |
|---|---|
| MARY FAYE KING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No.: 2005-000311 |
| | ) |
| PROVIDENT LIFE AND ACCIDENT | ) |
| INSURANCE COMPANY, et al., | ) |
| | ) |
| Defendant(s). | ) |

## ALIAS SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

**NOTICE TO:**          **UNUM Life Insurance Company of America**
**c/o Kathryn A. Reid, Registered Agent**
**2211 Congress Street**
**Portland, ME 04112**

The Complaint and amendments, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to Jeffrey C. Kirby, the attorney for the Plaintiff whose address is PITTMAN, HOOKS, DUTTON, KIRBY & HELLUMS, P.C., 1100 Park Place Tower, Birmingham, Alabama 35203. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT, AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDS IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court with a reasonable time afterward.

Dated: _1-26-06_                  _Mike Smith_
                          **CLERK OF COURT**

IN THE CIRCUIT COURT OF CHILTON COUNTY, ALABAMA

CASE NO.:  2005- 000311 B

MARY FAYE KING ,

     Plaintiff,

v.

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY; BAPTIST SHELBY MEDICAL CENTER d/b/a BAPTIST HEALTH SYSTEM, INC.; and Fictitious** Defendants **No. 1,** whether singular or plural, that entity who or which sold any policy to Plaintiffs prior to the incident made the basis of this lawsuit; **No. 2,** whether singular or plural, that entity who or which, as an agent, sold any policy to the plaintiffs made the basis of this lawsuit; **No. 3,** whether singular or plural, Plaintiffs hereby intending to designate that certain insurance agency which, through its agents or otherwise, sold plaintiffs any policy made the basis of this suit; **No. 4,** whether singular or plural, that entity who or which, through agents or otherwise, marketed to Plaintiffs any policy on or before the filing of this lawsuit; **No. 5,** whether singular or plural, Plaintiffs hereby intending to designate that certain insurance company which issued, insured, or participated in the matters alleged herein; **No. 6,** whether singular or plural, that entity who or which sold to Plaintiffs any insurance policy **No. 9,** whether singular or plural, that entity who or which was a representative, managing general agent, agent, claim specialist and/or underwriter for any insurance company which in any way may be involved with Plaintiffs' insurance policies ; **No. 10,** whether singular or plural that entity who or which, as described above, is the predecessor corporation of any of the entities described above or in the body of the complaint; and **No. 11,** whether singular or plural, that entity who or which, as described above, is the successor corporation of any of the entities described herein; and **No. 12** whether singular or plural, that entity who or which had any involvement with the denial of said claims. (Plaintiff avers that the identities of the Fictitious Party Defendants herein are otherwise unknown to the Plaintiff at this time or, if their names are known to Plaintiff at this time, their identities as proper party defendants are not known to the plaintiff at this time, and their true names will be substituted by amendment when ascertained.);

     Defendants.

---

## SECOND AMENDMENT TO COMPLAINT

     Comes now the plaintiff, by and through counsel of record, pursuant to Rule 15 of the

Alabama Rules of Civil Procedure, and moves this Honorable Court to clarify the claims and amend

the Complaint in the above-styled cause, as follows:

1. Plaintiff herein readopts and realleges each and every reference and Count in Plaintiffs' initial Complaint filed on October 27, 2005 and amends the Complaint as follows:

> Each and every count and paragraph, separately and severally wherein defendant is referred to as "Provident Life and Accident Insurance Company" should be amended and identified as UNUM Life Insurance Company of America.

2. Additionally, Plaintiff amends to add and clarify additional parties: Plaintiff alleges that her damages described in the initial complaint filed October 27, 2005, are a proximate consequence of the wrongful, negligent or wanton conduct of the defendants, UNUM LIFE INSURANCE COMPANY OF AMERICA, and fictitious party defendant nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12 described above.

3. Defendant nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12, whose correct names and identities are unknown to plaintiff, but who will be correctly named and identified when ascertained, are the respective entities who or which fit the descriptions above.

Jeffrey C. Kirby (KIR002)
David J. Hodge (HOD016)
Attorneys for Plaintiff

OF COUNSEL:

PITTMAN, HOOKS, DUTTON, KIRBY & HELLUMS, P.C.
2001 Park Place North
1100 Park Place Tower
Birmingham, Alabama 35203
(205) 322-8880
(205) 328-2711 facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on this the _25th_ day of January, 2006, I served a copy of the foregoing via U.S. Mail, properly addressed and postage prepaid to the following:

> Kaye K. Houser, Esquire
> Stephen R. Geisler, Esquire
> Sirote & Permutt, P.C.
> 2311 Highland Avenue South
> P.O. Box 55727
> Birmingham, Alabama  35255-5727

_____
Of Counsel for Plaintiff

## IN THE CIRCUIT COURT OF CHILTON COUNTY, ALABAMA

| | |
|---|---|
| MARY FAYE KING, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No.: 2005- 000311 |
| | ) |
| PROVIDENT LIFE AND ACCIDENT | ) |
| INSURANCE COMPANY, et al., | ) |
| | ) |
| Defendant(s). | ) |

## SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

NOTICE TO:        **Provident Life and Accident Insurance Company**
**c/o CT Corporation Company**
**2000 Interstate Park Ste. 204**
**Montgomery, Alabama  36109**

The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights.  You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to Jeffrey C. Kirby, the attorney for the Plaintiff whose address is PITTMAN, HOOKS, DUTTON, KIRBY & HELLUMS, P.C., 1100 Park Place Tower, Birmingham, Alabama 35203.  THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT, AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDS IN THE COMPLAINT.  You must also file the original of your Answer with the Clerk of this Court with a reasonable time afterward.

Dated: _____      _____
        **CLERK OF COURT**

**EXHIBIT A**

# IN THE CIRCUIT COURT OF CHILTON COUNTY, ALABAMA

MARY FAYE KING,           )
                                    )
           Plaintiff,         )
                                    )
vs.                           ) Civil Action No.: _____
                                    )
PROVIDENT LIFE AND ACCIDENT  )
INSURANCE COMPANY, et al.,      )
                                    )
           Defendant(s).     )

## SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

NOTICE TO:               Baptist Shelby Medical Center
                              d/b/a Baptist Health System, Inc.
                              C/o Kerry Black, Registered Agent
                              3201 4th Avenue South
                              Birmingham, Alabama  35222

The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to Jeffrey C. Kirby, the attorney for the Plaintiff whose address is PITTMAN, HOOKS, DUTTON, KIRBY & HELLUMS, P.C., 1100 Park Place Tower, Birmingham, Alabama 35203. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT, AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDS IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court with a reasonable time afterward.

Dated: _____         _____
                                          CLERK OF COURT

IN THE CIRCUIT COURT OF CHILTON COUNTY, ALABAMA

CASE NO.: CV 05 - 000311

**MARY FAYE KING** ,

      Plaintiff,

v.

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY; BAPTIST SHELBY MEDICAL CENTER d/b/a BAPTIST HEALTH SYSTEM, INC.** and Fictitious Defendants **No. 1**, whether singular or plural, that entity who or which sold any policy to Plaintiffs prior to the incident made the basis of this lawsuit; **No. 2**, whether singular or plural, that entity who or which, as an agent, sold any policy to the plaintiffs made the basis of this lawsuit; **No. 3**, whether singular or plural, Plaintiffs hereby intending to designate that certain insurance agency which, through its agents or otherwise, sold plaintiffs any policy made the basis of this suit; **No. 4**, whether singular or plural, that entity who or which, through agents or otherwise, marketed to Plaintiffs any policy on or before the filing of this lawsuit; **No. 5**, whether singular or plural, Plaintiffs hereby intending to designate that certain insurance company which issued, insured, or participated in the matters alleged herein; **No. 6**, whether singular or plural, that entity who or which sold to Plaintiffs any insurance policy  **No. 9**, whether singular or plural, that entity who or which was a representative, managing general agent, agent, claim specialist and/or underwriter for any insurance company which in any way may be involved with Plaintiffs' insurance policies ; **No. 10**, whether singular or plural that entity who or which, as described above, is the predecessor corporation of any of the entities described above or in the body of the complaint; and **No. 11**, whether singular or plural, that entity who or which, as described above, is the successor corporation of any of the entities described herein; and **No. 12** whether singular or plural, that entity who or which had any involvement with the denial of said claims. (Plaintiff avers that the identities of the Fictitious Party Defendants herein are otherwise unknown to the Plaintiff at this time or, if their names are known to Plaintiff at this time, their identities as proper party defendants are not known to the plaintiff at this time, and their true names will be substituted by amendment when ascertained.);

      Defendants.

# COMPLAINT

## PARTIES

1.    Plaintiff, MARY FAYE KING (hereinafter "KING"), is above the age of nineteen years of age and is a resident of Chilton County, Alabama.

2.      Defendant, PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY (hereinafter "PROVIDENT"), is a foreign insurance company which operates in the state of Alabama.

3.      Defendant, BAPTIST SHELBY MEDICAL CENTER d/b/a BAPTIST HEALTH SYSTEM, INC. (hereinafter "BAPTIST"), is owned, operated and/or managed a hospital facility known as Baptist Shelby Medical Center in Alabaster, Alabama. BAPTIST employed the Plaintiff and provided a life and/or disability insurance policy to the Plaintiff as consideration for Plaintiff's employment.

## FACTS

4.      Up and until the date of her disability, Plaintiff was employed by and insured under a policy of insurance issued to Baptist Shelby Medical Center. BAPIST is and was an Alabama public corporation originally incorporated in the state of Alabama.

5.      Defendants, PROVIDENT and BAPTIST, issued a life and/or disability insurance policy to Plaintiff in consideration for the premiums paid by Plaintiff and/or BAPTIST.

6.      Defendant BAPTIST collected premiums and assisted in the administration of Plaintiff's life and/or disability policy.

7.      Benefits pursuant to the life and/or disability insurance contract were available to Plaintiff at all times relevant to this Complaint.

8.      Defendants, PROVIDENT and BAPTIST, provided the Plaintiff with a policy of

insurance for coverage for disability and life insurance.

9.    Plaintiff is totally disabled and not able to function in a workplace setting at any occupation.

10.    Plaintiff filed a claim and for waiver of premium benefits under her life insurance policy through Defendant, PROVIDENT.

11.    On September 2, 2004 plaintiff was terminated by BAPTIST.

12.    Defendant, PROVIDENT, wrongfully denied and failed to pay the Plaintiff's claims for her life insurance premiums. Plaintiff has suffered damages as a direct and proximate result of Defendant's conduct.

## COUNT I

### FRAUD

13.    Plaintiff adopts and incorporates by reference paragraphs 1- 12 of her complaint as if the same were fully set out herein.

14.    Defendants, PROVIDENT and BAPTIST, defrauded Plaintiff and misrepresented the material facts of her eligibility for life and/or disability insurance benefits. Plaintiff relied on the misrepresentations to her detriment. Said misrepresentations of material facts and fraud were committed willfully and maliciously and with the intent to defraud and deceive Plaintiff.

15.    The named defendants committed said fraud by representing to Plaintiff that she would receive a waiver of premium insurance as a result of Plaintiff's inability to work. PROVIDENT accepted Plaintiff's and/or BAPTIST's premium payments for said insurance

coverage. When Plaintiff made a claim on the policy of insurance, Defendant, PROVIDENT, denied coverage and refused to pay the claim.

16.    As a proximate cause of the fraud and misrepresentation of Defendants, Plaintiff has suffered damages. Plaintiff has been denied benefits under said policy of insurance and has suffered emotional and mental distress.

## COUNT II

### SUPPRESSION OF MATERIAL FACTS

17.    Plaintiff adopts and incorporates by reference paragraphs 1- 16 of her complaint as if the same were fully set out herein.

18.    Defendants, PROVIDENT and BAPTIST, fraudulently suppressed and/or concealed material facts from Plaintiff concerning her insurance and/or disability insurance coverage with Defendants.

19.    Defendants, PROVIDENT and BAPTIST, were under a duty to disclose these material facts to the Plaintiff.

20.    As a proximate result of Defendant's fraudulent suppression and/or concealment, Plaintiff was caused to be damaged as described herein.

## COUNT III

### UNJUST ENRICHMENT

21.    Plaintiff adopts and incorporates by reference paragraphs 1- 20 of her complaint as if the same were fully set out herein.

22.     Defendant BAPTIST received services from the Plaintiff in consideration of her employment benefits, including the alleged life and/or disability benefits.  Defendant BAPTIST assisted PROVIDENT in the maintenance and administration of the terms and coverage for the life and/or disability benefits.

23.     Defendants PROVIDENT and BAPTIST received and currently possess monies which belong to Plaintiff which were obtained wrongfully, through fraud and/or deceptive practices.

24.     As a proximate cause of Defendants retaining these monies, Plaintiff has been injured as described hereinabove.

25.     The aforementioned acts and conduct by the Defendants, described in particularity hereinabove, have resulted in the Defendants' unjust enrichment to the detriment of Plaintiff.

### COUNT IV

### CONVERSION

26.     Plaintiff adopts and incorporates by reference paragraphs 1- 25 of her complaint as if the same were fully set out herein.

27.     Defendant BAPTIST collected life and/or disability insurance premiums from the Plaintiff.  These premium payments were wrongfully appropriated by Defendants PROVIDENT and BAPTIST for Defendants' own use and benefit.  Said premium payments constitute specific money, capable of identification.  Said premium payments were specifically withdrawn from the Plaintiff's paycheck and/or paid to BAPTIST by plaintiff at the direction of the Defendants PROVIDENT and BAPTIST.

28.    Defendants PROVIDENT and BAPTIST have willfully exercised unlawful dominion and control over said funds.


## COUNT V

### BREACH OF CONTRACT

29.    Plaintiff adopts and incorporates by reference paragraphs 1- 29 of her complaint as if the same were fully set out herein.


30.    The plaintiff insured under a contract of insurance issued by the defendant, PROVIDENT.  The plaintiff provided the defendant with all information and documents requested by the defendant and otherwise compiled with all provisions of said contract.  In violation of the express terms of said contract, PROVIDENT denied plaintiff's claims for benefits.


31.    As a direct and proximate consequence of PROVIDENT's breach of the life and/or disability contract, Plaintiff has been injured and damaged by not receiving waiver of premium benefits and suffering mental anguish.


## COUNT VI

### BAD FAITH FAILURE TO PAY INSURANCE

32.    Plaintiff adopts and incorporates by reference paragraphs 1- 31 of her complaint as if the same were fully set out herein.


33.    PROVIDENT had a duty imposed by law to exercise good faith and fair dealings

in the performance of the contractual obligations under the terms of the aforesaid policy of insurance and/or disability insurance. This duty was breached, either in that PROVIDENT had no arguable basis for denying Plaintiff's claim or in that it failed to adequately investigate said claim, and denied Plaintiff's claim without determining whether there was any arguable basis for denying it. Said conduct constitutes bad faith.

WHEREFORE, premises considered, plaintiff demands judgment against the defendants, in such an amount of compensatory damages as will reasonably and adequately compensate plaintiff for her injuries or damages, and for punitive damages in an amount that will reflect the enormity of the wrongs committed by the defendants and deter similar conduct in the future by similarly situated entities.

Jeffrey C. Kirby (KIR002)
David J. Hodge (HOD016)
Attorneys for Plaintiff

OF COUNSEL:

PITTMAN, HOOKS, DUTTON, KIRBY & HELLUMS, P.C.
2001 Park Place North
1100 Park Place Tower
Birmingham, Alabama 35203
(205) 322-8880
(205) 328-2711 facsimile

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a struck jury for the trial of this case.

_____
Of Counsel for Plaintiff

## REQUEST FOR SERVICE

Pursuant to Alabama Rules of Civil Procedure 4.1 and 4.2, plaintiff requests that the foregoing Summons and Complaint be served by certified mail.

_____
Of Counsel

## DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL:

PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY
c/o C T Corporation Co.
2000 Interstate Park
Suite 204
Montgomery, Alabama 36109

BAPTIST SHELBY MEDICAL CENTER
d/b/a BAPTIST HEALTH SYSTEM, INC.
c/o Kerry Black, Registered Agent
3201 4th Avenue South
Birmingham, Alabama  35222

# IN THE CIRCUIT COURT OF CHILTON COUNTY, ALABAMA

MARY FAYE KING,                          )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )
                                         )
PROVIDENT    LIFE    AND    ACCIDENT)          CIVIL ACTION NO. CV-05-311-B
INSURANCE COMPANY; BAPTIST SHELBY)
MEDICAL CENTER d/b/a BAPTIST HEALTH)
SYSTEM, INC.,                            )
                                         )
            Defendants.                  )

## MOTION TO DISMISS

COMES NOW Provident Life and Accident Insurance Company ("Provident"), one of the Defendants in the above-styled matter, and moves the Court to dismiss Plaintiff's claims against it on the ground that Provident is not a proper party defendant. This Motion does not constitute a waiver of any grounds for dismissal that a proper party defendant may have. In support of this Motion, Provident states as follows:

1.      Plaintiff filed her Complaint on or about October 27, 2005, naming Provident and Baptist Shelby Medical Center d/b/a Baptist Health System, Inc. ("Baptist") as Defendants.

2.      Plaintiff alleges in her Complaint that "Defendants, PROVIDENT and BAPTIST, issued a life and/or disability insurance policy to Plaintiff in consideration for the premiums paid by Plaintiff and/or BAPTIST," and that "Defendants, PROVIDENT and BAPTIST, provided the Plaintiff with a policy of insurance for coverage for disability and life insurance." (Compl. ¶¶ 5, 8.) Plaintiff alleges further that she "filed a claim and for waiver of premium benefits under her life insurance policy through Defendant, PROVIDENT," and that

docsbhm\1343936\1\

"Defendant PROVIDENT, wrongfully denied and failed to pay the Plaintiff's claims for her life insurance premiums." (Compl. ¶¶ 10, 12.)

3.     Based on those allegations, Plaintiff asserts claims against Provident sounding in fraud (through alleged representations that Plaintiff "would receive a waiver of premium insurance as a result of [her] inability to work");[1] suppression (through alleged suppression of "material facts from Plaintiff concerning her insurance and/or disability insurance coverage with Defendants");[2] unjust enrichment (through the alleged receipt and possession of "monies which belong to Plaintiff which were obtained wrongfully, through fraud and/or deceptive practices"); conversion (through the alleged appropriation of premium payments);[3] breach of contract (through the alleged breach of a contract of insurance); and bad faith (through the alleged denial of insurance benefits).

4.     Provident is not a party to the insurance contract at issue in this case. It is undisputed that Provident did not sell or issue the disability insurance policy under which Plaintiff seeks relief.

5.     Unum Life Insurance Company of America ("Unum"), which is a separate and independent entity, issued the subject disability insurance policy. (A copy of the Unum policy is attached hereto as Exhibit "A.") Because Plaintiff's Complaint relies upon and references the Unum insurance policy, reference to that policy in Provident's Motion to Dismiss does not convert this Motion into a motion for summary judgment. *See Donoghue v. American*

---

[1] Plaintiff fraud count does not state a claim upon which relief can be granted because Plaintiff does not plead fraud with the particularity required by Rule 9(b) of the Alabama Rules of Civil Procedure.

[2] Plaintiff's suppression count does not state a claim upon which relief can be granted because Plaintiff does not plead suppression with the particularity required by Rule 9(b) of the Alabama Rules of Civil Procedure.

[3] Plaintiff's conversion claim does not state a claim upon which relief can be granted because "ordinarily 'an action will not lie for the conversion of money,'" and Plaintiff's premium payments were not sufficiently identifiable to be the subject of a conversion claim. *See Willingham v. United Ins. Co.*, 628 So. 2d 328, 333 (Ala. 1993).

*Nat. Ins. Co.*, 838 So. 2d 1032, 1036 (Ala. 2002) (stating "we conclude that we need not treat American National's motion to dismiss as a motion for a summary judgment. Donoghue's complaint specifically references the policy, and the purchase and substance of the policy serve as the foundation for each of Donoghue's claims.").

6. Because Provident did not issue the subject insurance policy and did not have a contract of insurance with Plaintiff, Plaintiff cannot maintain her claims against Provident.

WHEREFORE, PREMISES CONSIDERED, Provident respectfully requests that this Honorable Court enter an order dismissing it as a party defendant in this action.

Respectfully submitted,

Kaye K. Houser (HOU002)
Stephen R. Geisler (GEI003)
Attorneys for Provident Life and Accident
Insurance Company

**OF COUNSEL:**
SIROTE & PERMUTT, P.C.
2311 Highland Avenue South
P.O. Box 55727
Birmingham, AL 35255-5727
Telephone:    (205) 930-5100
Facsimile:    (205) 930-5101

## CERTIFICATE OF SERVICE

I hereby certify that on this the ___5___ day of December, 2005, I served a copy of the foregoing via U.S. Mail, properly addressed and postage prepaid to the following:

Jeffrey C. Kirby, Esq.
David J. Hodge, Esq.
PITTMAN, HOOKS, DUTTON, KIRBY & HELLUMS, P.C.
2001 Park Place North
1100 Park Place Tower
Birmingham, Alabama 35203
Tel: (205) 322-8880
Fax: (205) 328-2711

OF COUNSEL



UNUM Life Insurance Company of America

Endorsement

**Wherever the phrase <u>family status change</u> is referenced in a provision, it is replaced by the phrase <u>change in status</u>.**

**Additionally, changes have been made to the following paragraphs contained in the WHEN CAN YOU CHANGE YOUR COVERAGE BY CHOOSING ANOTHER ADDITIONAL BENEFIT [CHOICE] [OPTION] provision in the Employee section:**

Changes in coverage that are made at a family status change will begin at 12:01 a.m. on the latest of:

- the date of the family status change, if you apply on or before that date; or
- the date you apply, if you apply within 31 days after the date of the family status change; or
- the date UNUM approves your evidence of insurability form, if evidence of insurability is required.

Changes in coverage must be appropriate and consistent with the family status change.

An evidence of insurability form can be obtained from your Employer.

**The above referenced paragraphs have been replaced as follows:**

A change in coverage due to a change in status will begin at 12:01 a.m. on the latest of:

- the date of the change in status, if you apply on or before that date; or
- the date you apply, if you apply within 31 days after the date of the change in status; or
- the date UNUM approves your evidence of insurability form, if evidence of insurability is required.

Changes in coverage must be consistent with the change in status.

An evidence of insurability form can be obtained from your Employer.

**The following paragraph replaces the definition entitled Family Status Change in the Glossary Section:**

**Change in status** means a change in status as defined in the regulations under Internal Revenue Code section 125, unless your Employer's cafeteria plan document or human resource policy contains more restrictive provisions. In that event, your Employer may restrict the situations where you can change your coverage.

By

Secretary

Section 125-22

 **UNUM.**

**GROUP INSURANCE
SUMMARY OF BENEFITS
NON-PARTICIPATING**

**IDENTIFICATION NUMBER:**    550459 001

**EFFECTIVE DATE OF
COVERAGE:**    June 1, 2000

**ANNIVERSARY DATE:**    January 1

**GOVERNING JURISDICTION:**    Maine

### Unum Life Insurance Company of America
### insures the lives of

### Baptist Health System, Inc.

#### under the
#### Select Group Insurance Trust
#### Policy No. 292000

Unum Life Insurance Company of America (referred to as Unum) will provide benefits under this Summary of Benefits.  Unum makes this promise subject to all of this Summary of Benefits' provisions.

The Employer should read this Summary of Benefits carefully and contact Unum promptly with any questions.  This Summary of Benefits is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments.

Signed for Unum at Portland, Maine on the Effective Date of Coverage.

President                                Secretary

Unum Life Insurance Company of America
2211 Congress Street
Portland, Maine 04122

Copyright 1993, Unum Life Insurance Company of America

C.FP-2                    C.FP-1   (6/1/2000) REV

# TABLE OF CONTENTS

BENEFITS AT A GLANCE...................................................................................B@G-LIFE-1

LIFE INSURANCE PLAN.................................................................................B@G-LIFE-1

CLAIM INFORMATION......................................................................................LIFE-CLM-1

LIFE INSURANCE................................................................................................LIFE-CLM-1

EMPLOYER PROVISIONS...................................................................................EMPLOYER-1

CERTIFICATE SECTION ...........................................................................................CC.FP-1

GENERAL PROVISIONS ...................................................................................EMPLOYEE-1

LIFE INSURANCE.................................................................................................LIFE-BEN-1

BENEFIT INFORMATION...................................................................................LIFE-BEN-1

OTHER BENEFIT FEATURES ...........................................................................LIFE-OTR-1

ERISA ..........................................................................................................................ERISA-1

GLOSSARY .........................................................................................................GLOSSARY-1

# BENEFITS AT A GLANCE

## LIFE INSURANCE PLAN

This life insurance plan provides financial protection for your beneficiary(ies) by paying a benefit in the event of your death. The amount your beneficiary(ies) receive(s) is based on the amount of coverage in effect just prior to the date of your death according to the terms and provisions of the plan. You also have the opportunity to have coverage for your dependents.

**EMPLOYER'S ORIGINAL PLAN
EFFECTIVE DATE:**    June 1, 2000

**PLAN YEAR:**

June 1, 2000 to January 1, 2001 and each following January 1 to January 1

**IDENTIFICATION
NUMBER:**    550459 001

**ELIGIBLE GROUP(S):**

Group 1
Non-Execuflex Employees in active employment in the United States with the Employer

Group 2
Execuflex Employees in active employment in the United States with the Employer

**MINIMUM HOURS REQUIREMENT:**

Employees must be classified in a full time job status. Full time job status includes employees who work 7 consecutive days on followed by 7 consecutive days off, averaging 56 hours per pay period.

**WAITING PERIOD:**

**Baptist Health System Employees**
For employees in an eligible group on or before June 1, 2000: None

For employees entering an eligible group after June 1, 2000: None

For employees entering an eligible group after March 1, 2001: The beginning of the pay period following 27 days of employment (for basic and supplemental coverage)

You must be in continuous active employment in an eligible group during the specified waiting period.

**All Other Employees**
For employees in an eligible group on or before June 1, 2000: None

For employees entering an eligible group after June 1, 2000: None

You must be in continuous active employment in an eligible group during the specified waiting period.

**REHIRE:**

If your employment ends and you are rehired within 90 days, your previous work while in an eligible group will apply toward the waiting period. All other Summary of Benefits' provisions apply.

## WHO PAYS FOR THE COVERAGE:

### For You:

*Basic Benefit:*

Your Employer pays the cost of your coverage.

*Additional Benefit:*

You pay the cost of your coverage.

### For Your Dependents:

Your Employer pays the cost of your dependent coverage.

## ELIMINATION PERIOD:

Premium Waiver: 12 months

Disability-based benefits begin the day after Unum approves your claim and the elimination period is completed.

## LIFE INSURANCE BENEFIT:

### AMOUNT OF LIFE INSURANCE FOR YOU

#### BASIC BENEFIT

**Non-Execuflex Employees**
1 x annual earnings to a maximum of $600,000

**Execuflex Employees**
1 x annual earnings to a maximum of $50,000

All amounts are rounded to the next higher multiple of $1,000, if not already an exact multiple thereof.

### ADDITIONAL BENEFIT OPTIONS:

*Option A*

1 x annual earnings

*Option B*

2 x annual earnings

*Option C*

3 x annual earnings

*Option D*

4 x annual earnings

B@G-LIFE-2   (3/1/2001)

All amounts are rounded to the next higher multiple of $1,000, if not already an exact multiple thereof.

AMOUNT OF LIFE INSURANCE AVAILABLE IF YOU BECOME INSURED AT CERTAIN AGES OR HAVE REACHED CERTAIN AGES WHILE INSURED

If you have reached age 65, your amount of life insurance will be:
- 65% of the amount of life insurance you had prior to age 65; or
- 65% of the amount of life insurance shown above if you become insured on or after age 65.

EVIDENCE OF INSURABILITY IS REQUIRED IF:

- you apply for additional benefit options more than 31 days after your eligibility date;
- you increase your coverage by any level; or
- you receive an increase in annual earnings accumulated within a plan year that exceeds $100,000.

OVERALL MAXIMUM BENEFIT OF LIFE INSURANCE FOR YOU (BASIC AND ADDITIONAL BENEFITS COMBINED):

   $600,000

**AMOUNT OF LIFE INSURANCE FOR YOUR DEPENDENTS**

   **Spouse:**

   $3,000

   **Children:**

| | |
|---|---|
| Live birth to 14 days: | $200 |
| 14 days to 6 months: | $200 |
| 6 months to age 21 or to 25 if a full-time student: | $1,000 |

**SOME LOSSES MAY NOT BE COVERED UNDER THIS PLAN.**

**OTHER FEATURES:**

   Accelerated Benefit

   Conversion

   Portability

**The above items are only highlights of this plan. For a full description of your coverage, continue reading your certificate of coverage section.**

# CLAIM INFORMATION

# LIFE INSURANCE

### WHEN DO YOU OR YOUR AUTHORIZED REPRESENTATIVE NOTIFY UNUM OF A CLAIM?

We encourage you or your authorized representative to notify us as soon as possible, so that a claim decision can be made in a timely manner.

If a claim is based on your disability, written notice and proof of claim must be sent no later than 90 days after the end of the elimination period.

If a claim is based on death, written notice and proof of claim must be sent no later than 90 days after the date of death.

If it is not possible to give proof within these time limits, it must be given no later than 1 year after the proof is required as specified above. These time limits will not apply during any period you or your authorized representative lacks the legal capacity to give us proof of claim.

The claim form is available from your Employer, or you or your authorized representative can request a claim form from us. If you or your authorized representative does not receive the form from Unum within 15 days of the request, send Unum written proof of claim without waiting for the form.

If you have a disability, you must notify us immediately when you return to work in any capacity, regardless of whether you are working for your Employer.

### HOW DO YOU FILE A CLAIM FOR A DISABILITY?

You or your authorized representative, and your Employer must fill out your own sections of the claim form and then give it to your attending physician. Your physician should fill out his or her section of the form and send it directly to Unum.

### WHAT INFORMATION IS NEEDED AS PROOF OF YOUR CLAIM?

If your claim is based on your disability, your proof of claim, provided at your expense, must show:

- that you are under the **regular care** of a **physician**;
- the date your disability began;
- the cause of your disability;
- the extent of your disability, including restrictions and limitations preventing you from performing your regular occupation or any gainful occupation; and
- the name and address of any **hospital or institution** where you received treatment, including all attending physicians.

We may request that you send proof of continuing disability indicating that you are under the regular care of a physician. This proof, provided at your expense, must be received within 30 days of a request by us.

LIFE-CLM-1   (6/1/2000) REV

If claim is based on death, proof of claim, provided at your or your authorized representative's expense, must show the cause of death. Also a certified copy of the death certificate must be given to us.

In some cases, you will be required to give Unum authorization to obtain additional medical and non-medical information as part of your proof of claim or proof of continuing disability. Unum will deny your claim if the appropriate information is not submitted.

## WHEN CAN UNUM REQUEST AN AUTOPSY?

In the case of death, Unum will have the right and opportunity to request an autopsy where not forbidden by law.

## HOW DO YOU DESIGNATE OR CHANGE A BENEFICIARY? (Beneficiary Designation)

At the time you become insured, you should name a beneficiary for your death benefits under your life insurance. You may change your beneficiary at any time with your Employer. The new beneficiary designation will be effective as of the date you sign a form or file an electronic designation in your Employer's electronic enrollment system. However, if we have taken any action or made any payment before your Employer receives that form, that change will not go into effect.

It is important that you name a beneficiary and keep your designation current. If more than one beneficiary is named and you do not designate their order or share of payments, the beneficiaries will share equally. The share of a beneficiary who dies before you, or the share of a beneficiary who is disqualified, will pass to any surviving beneficiaries in the order you designated.

If you do not name a beneficiary, or if all named beneficiaries do not survive you, or if your named beneficiary is disqualified, your death benefit will be paid to your estate.

Instead of making a death payment to your estate, Unum has the right to make payment to the first surviving family members of the family members in the order listed below:

- spouse;
- child or children;
- mother or father; or
- sisters or brothers.

If we are to make payments to a beneficiary who lacks the legal capacity to give us a release, Unum may pay up to $2,000 to the person or institution that appears to have assumed the custody and main support of the beneficiary. This payment made in good faith satisfies Unum's legal duty to the extent of that payment and Unum will not have to make payment again.

Also, at Unum's option, we may pay up to $1,000 to the person or persons who, in our opinion, have incurred expenses for your last sickness and death.

LIFE-CLM-2   (6/1/2000) REV

In addition, if you do not survive your spouse, and dependent life coverage is continued, then your surviving spouse should name a beneficiary according to the requirements specified above for you.

## HOW WILL UNUM MAKE PAYMENTS?

If your or your dependent's life claim is at least $10,000, Unum will make available to the beneficiary a **retained asset account** (the Unum Security Account).

Payment for the life claim may be accessed by writing a draft in a single sum or drafts in smaller sums. The funds for the draft or drafts are fully guaranteed by Unum.

If the life claim is less than $10,000, Unum will pay it in one lump sum to you or your beneficiary.

Also, you or your beneficiary may request the life claim to be paid according to one of Unum's other settlement options. This request must be in writing in order to be paid under Unum's other settlement options.

If you do not survive your spouse, and dependent life coverage is continued, then your surviving spouse's death claim will be paid to your surviving spouse's beneficiary.

All other benefits will be paid to you.

## WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?

Unum has the right to recover any overpayments due to:

- fraud; and
- any error Unum makes in processing a claim.

You must reimburse us in full. We will determine the method by which the repayment is to be made.

Unum will not recover more money than the amount we paid you.

## WHAT ARE YOUR ASSIGNABILITY RIGHTS FOR THE DEATH BENEFITS UNDER YOUR LIFE INSURANCE? (Assignability Rights)

The rights provided to you by the plan for life insurance are owned by you, unless:

- you have previously assigned these rights to someone else (known as an "assignee"); or
- you assign your rights under the plan(s) to an assignee.

We will recognize an assignee as the owner of the rights assigned only if:

- the assignment is in writing, signed by you, and acceptable to us in form; and
- a signed or certified copy of the written assignment has been received and registered by us at our home office.

LIFE-CLM-3   (6/1/2000) REV

We will not be responsible for the legal, tax or other effects of any assignment, or for any action taken under the plan(s') provisions before receiving and registering an assignment.

LIFE-CLM-4  (6/1/2000) REV

# EMPLOYER PROVISIONS

## *WHAT DOES THIS SUMMARY OF BENEFITS CONSIST OF FOR THE EMPLOYER?*

This Summary of Benefits consists of:

- all Summary of Benefits' provisions and any amendments and/or attachments issued;
- the Employer's Participation Agreement;
- each employee's application for insurance (employee retains his own copy); and
- the certificate of coverage issued for each employee of the Employer.

This Summary of Benefits may be changed in whole or in part. Only an officer or a registrar of Unum can approve a change. The approval must be in writing and endorsed on or attached to this Summary of Benefits. No other person, including an agent, may change this Summary of Benefits or waive any part of it.

## *WHAT IS THE COST OF THIS INSURANCE?*

## LIFE INSURANCE

Premium payments are *required* for an insured while he or she is disabled under this plan.

The initial premium for each **plan** is based on the initial rate(s) shown in the Rate Information Amendment(s).

### *PREMIUM WAIVER*

Unum does not require premium payments for an insured employee's life coverage if he or she is under age 60 and disabled for 12 months. Proof of disability, provided at the insured employee's expense, must be filed by the insured employee and approved by Unum.

### *INITIAL RATE GUARANTEE AND RATE CHANGES*

Refer to the Rate Information Amendment(s).

## *WHEN IS PREMIUM DUE FOR THIS SUMMARY OF BENEFITS?*

Premium Due Dates:  Premium due dates are based on the Premium Due Dates shown in the Rate Information Amendment(s).

The **Employer** must send all premiums to Unum on or before their respective due date. The premium must be paid in United States dollars.

## *WHEN ARE INCREASES OR DECREASES IN PREMIUM DUE?*

Premium increases or decreases which take effect during an insurance month are adjusted and due on the next premium due date following the change. Changes will not be pro-rated daily.

If premiums are paid on other than a monthly basis, premiums for increases and decreases will result in a monthly pro-rated adjustment on the next premium due date.

Unum will only adjust premium for the current plan year and the prior plan year. In the case of fraud, premium adjustments will be made for all plan years.

## WHAT INFORMATION DOES UNUM REQUIRE FROM THE EMPLOYER?

The Employer must provide Unum with the following on a regular basis:

- information about employees:
  - who are eligible to become insured;
  - whose amounts of coverage change; and/or
  - whose coverage ends;
- occupational information and any other information that may be required to manage a claim; and
- any other information that may be reasonably required.

Employer records that, in Unum's opinion, have a bearing on this Summary of Benefits will be available for review by Unum at any reasonable time.

Clerical error or omission by Unum will not:

- prevent an employee from receiving coverage;
- affect the amount of an insured's coverage; or
- cause an employee's coverage to begin or continue when the coverage would not otherwise be effective.

## WHO CAN CANCEL OR MODIFY THIS SUMMARY OF BENEFITS OR A PLAN UNDER THIS SUMMARY OF BENEFITS?

This Summary of Benefits or a plan under this Summary of Benefits can be cancelled:

- by Unum; or
- by the Employer.

Unum may cancel or modify this Summary of Benefits or a plan if:

- there is less than 100% participation of those eligible employees for Employer paid plan; or
- there is less than 75% participation of those eligible employees who pay all or part of the premium for a basic benefit plan; or
- the number of employees insured for all additional benefits is less than 15 lives or 25% of those eligible, whichever is greater; or
- the number of employees insured under a plan decreases by 25%; or
- the Employer does not promptly provide Unum with information that is reasonably required; or
- the Employer fails to perform any of its obligations that relate to this Summary of Benefits; or
- fewer than 15 employees are insured under a plan; or

EMPLOYER-2   (6/1/2000) REV

- the premium is not paid in accordance with the provisions of this Summary of Benefits that specify whether the Employer, the employee, or both, pay the premiums; or
- the Employer does not promptly report to Unum the names of any employees who are added or deleted from the eligible group; or
- Unum determines that there is a significant change, in the size, occupation or age of the eligible group as a result of a corporate transaction such as a merger, divestiture, acquisition, sale, or reorganization of the Employer and/or its employees; or
- the Employer fails to pay any portion of the premium within the 45 day **grace period**.

If Unum cancels or modifies this Summary of Benefits or a plan, for reasons other than the Employer's failure to pay premium, a written notice will be delivered to the Employer at least 31 days prior to the cancellation date or modification date. The Employer may cancel this Summary of Benefits or plan if the modifications are unacceptable.

If any portion of the premium is not paid during the grace period, Unum will either cancel or modify this Summary of Benefits or a plan automatically at the end of the grace period. The Employer is liable for premium for coverage during the grace period. The Employer must pay Unum all premium due for the full period each plan is in force.

The Employer may cancel this Summary of Benefits or a plan by written notice delivered to Unum at least 31 days prior to the cancellation date. When both the Employer and Unum agree, this Summary of Benefits or a plan can be cancelled on an earlier date. If Unum or the Employer cancels this Summary of Benefits or a plan, coverage will end at 12:00 midnight on the last day of coverage.

If this Summary of Benefits or a plan is cancelled, the cancellation will not affect a **payable claim**.

## WHAT HAPPENS TO AN EMPLOYEE'S COVERAGE UNDER THIS SUMMARY OF BENEFITS WHILE HE OR SHE IS ON A FAMILY AND MEDICAL LEAVE OF ABSENCE?

We will continue the employee's coverage in accordance with the Employer's Human Resource policy on family and medical leaves of absence if premium payments continue and the Employer approved the employee's leave in writing.

Coverage will be continued until the end of the latest of:

- the leave period required by the federal Family and Medical Leave Act of 1993, and any amendments; or
- the leave period required by applicable state law; or
- the leave period provided to the employee for injury or sickness.

If the Employer's Human Resource policy doesn't provide for continuation of a plan for an employee during a family and medical leave of absence, the employee's coverage will be reinstated when he or she returns to active employment.

We will not:

EMPLOYER-3   (6/1/2000) REV

- apply a new waiting period; or
- require evidence of insurability.

## DIVISIONS, SUBSIDIARIES OR AFFILIATED COMPANIES INCLUDE:

NAME/LOCATION (CITY AND STATE)

Galleria Woods
Birmingham, Alabama

Baptist Health Centers, Inc.
Birmingham, Alabama

Southern Medical Group
Birmingham, Alabama

Sportsfirst
Birmingham, Alabama

# CERTIFICATE SECTION

Unum Life Insurance Company of America (referred to as Unum) welcomes you as a client.

This is your certificate of coverage as long as you are eligible for coverage and you become insured. You will want to read it carefully and keep it in a safe place.

Unum has written your certificate of coverage in plain English. However, a few terms and provisions are written as required by insurance law. If you have any questions about any of the terms and provisions, please consult Unum's claims paying office. Unum will assist you in any way to help you understand your benefits.

If the terms and provisions of the certificate of coverage (issued to you) are different from the Summary of Benefits (issued to the Employer), the Summary of Benefits will govern. The Summary of Benefits may be changed in whole or in part. Only an officer or registrar of Unum can approve a change. The approval must be in writing and endorsed on or attached to the Summary of Benefits. Any other person, including an agent, may not change the Summary of Benefits or waive any part of it.

The Summary of Benefits is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments. When making a benefit determination under the Summary of Benefits, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the Summary of Benefits.

For purposes of effective dates and ending dates under the group Summary of Benefits, all days begin at 12:01 a.m. and end at 12:00 midnight at the Employer's address.

Unum Life Insurance Company of America
2211 Congress Street
Portland, Maine 04122

CC.FP-1   (6/1/2000) REV

# GENERAL PROVISIONS

## *WHAT IS THE CERTIFICATE OF COVERAGE?*

This certificate of coverage is a written statement prepared by Unum and may include attachments.  It tells you:

- the coverage for which you may be entitled;
- to whom Unum will make a payment; and
- the limitations, exclusions and requirements that apply within a plan.

## *WHEN ARE YOU ELIGIBLE FOR COVERAGE?*

If you are working for your Employer in an eligible group, the date you are eligible for coverage is the plan effective date.

## *WHEN DOES YOUR COVERAGE BEGIN?*

This plan provides different benefit options in addition to the basic benefit.  When you first become eligible for coverage, you may apply for any option, however, you cannot be covered under more than one option at a time.

Your Employer pays 100% of the cost of your coverage under the basic benefit.  You will automatically be covered under the basic benefit at 12:01 a.m. on the later of:

- the date you are eligible for coverage; or
- the date Unum approves your evidence of insurability form, if **evidence of insurability** is required.

When you and your Employer share the cost of your coverage for any option under a plan or when you pay 100% of the cost yourself for any option, you will be covered at 12:01 a.m. on the latest of:

- the date you are eligible for coverage, if you apply for insurance on or before that date;
- the date you apply for insurance, if you apply within 31 days after your eligibility date; or
- the date Unum approves your evidence of insurability form, if evidence of insurability is required.

## *WHEN CAN YOU APPLY FOR ADDITIONAL BENEFIT OPTIONS IF YOU APPLY MORE THAN 31 DAYS AFTER YOUR ELIGIBILITY DATE?  (Late Entrants)*

You can apply for additional benefit options only during an **annual enrollment period** or within 31 days of a **family status change**.  Evidence of insurability is required for any amount of insurance.

Unum and your Employer determine when the annual enrollment period begins and ends.  Coverage will begin at 12:01 a.m. on the date Unum approves your evidence of insurability form.

EMPLOYEE-1   (6/1/2000) REV

## WHEN CAN YOU CHANGE YOUR COVERAGE BY CHOOSING ANOTHER ADDITIONAL BENEFIT OPTION? (This does not apply to Late Entrants)

You can change your coverage by applying for a different additional benefit option only during an annual enrollment period or within 31 days of a family status change.

You can decrease your coverage any number of levels.

Evidence of insurability is required if you increase your coverage by any level.

If you are not approved for the increase in your coverage, you will automatically remain at the same level you had prior to applying for the increase.

Unum and your Employer determine when the annual enrollment period begins and ends.  A change in coverage that is made during an annual enrollment period will begin at 12:01 a.m. on the later of:

- the first day of the next plan year; or
- the date Unum approves your evidence of insurability form, if evidence of insurability is required.

Changes in coverage that are made at a family status change will begin at 12:01 a.m. on the latest of:

- the date of the family status change, if you apply on or before that date; or
- the date you apply, if you apply within 31 days after the date of the family status change; or
- the date Unum approves your evidence of insurability form, if evidence of insurability is required.

Changes in coverage must be appropriate and consistent with the family status change.

## IS EVIDENCE OF INSURABILITY REQUIRED IF YOU RECEIVE AN INCREASE IN YOUR ANNUAL EARNINGS?

If you remain covered for the same basic benefit and the same additional benefit option, evidence of insurability is not required for the first $100,000 of increased life amounts due to increased annual earnings accumulated within a plan year.

Evidence of insurability is required for any increased amount of life insurance that exceeds $100,000.  However, if you previously were declined coverage, evidence of insurability is required for any increases until Unum approves your evidence of insurability form.

If you are not in active employment due to an injury or sickness, this change in coverage due to a change in your annual earnings will begin on the date you return to active employment.

## WHAT IF YOU ARE ABSENT FROM WORK ON THE DATE YOUR COVERAGE WOULD NORMALLY BEGIN?

If you are absent from work due to injury, sickness, temporary layoff or leave of absence, your coverage will begin on the date you return to **active employment**.

If you were on an approved leave of absence during the change in carriers, your coverage would begin with the Employer's effective date.

## ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE NOT WORKING DUE TO INJURY OR SICKNESS?

If you are not working due to injury or sickness, and if premium is paid, you may continue to be covered up to the greater of 12 months or your retirement date.

## ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE TEMPORARILY NOT WORKING?

If you are on a temporary **layoff**, and if premium is paid, you will be covered for up to the end of the paycycle following the date your temporary layoff begins.

If you are on a **leave of absence**, and if premium is paid, you will be covered for up to 12 months following the date your leave of absence begins.

## WHEN WILL CHANGES TO YOUR COVERAGE TAKE EFFECT?

Once your coverage begins, any increased or additional coverage due to a change in your annual earnings or due to a plan change requested by your Employer will take effect immediately or on the date Unum approves your evidence of insurability form, if evidence of insurability is required. You must be in active employment or on a covered layoff or leave of absence.

If you are not in active employment due to injury or sickness, any increased or additional coverage due to a change in your annual earnings or due to a plan change will begin on the date you return to active employment.

Any decrease in coverage will take effect immediately but will not affect a **payable claim** that occurs prior to the decrease.

## WHEN DOES YOUR COVERAGE END?

Your coverage under the Summary of Benefits or a plan ends on the earliest of:

- the date the Summary of Benefits or a plan is cancelled;
- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the last day of the period for which you made any required contributions; or
- the last day you are in active employment unless continued due to a covered layoff or leave of absence or due to an injury or sickness, as described in this certificate of coverage.

Unum will provide coverage for a payable claim which occurs while you are covered under the Summary of Benefits or plan.

EMPLOYEE-3   (3/1/2001)

## WHEN ARE YOUR DEPENDENTS ELIGIBLE FOR COVERAGE?

The date your dependents are eligible for coverage is the later of:

- the date your insurance begins; or
- the date you first acquire a dependent.

## WHAT DEPENDENTS ARE ELIGIBLE FOR COVERAGE?

The following dependents are eligible for coverage under the plan:

- Your lawful spouse, including a legally separated spouse. You may not cover your spouse as a dependent if your spouse is enrolled for coverage as an employee.

- Your unmarried children from live birth but less than age 21. Stillborn children are not eligible for coverage.

- Your unmarried dependent children age 21 or over but under age 25 also are eligible if they are full-time students at an **accredited school**.

Children include your own natural offspring, lawfully adopted children and stepchildren. They also include foster children and other children who are dependent on you for main support and living with you in a regular parent-child relationship. A child will be considered adopted on the date of placement in your home.

No dependent child may be covered by more than one employee in the plan.

No dependent child can be covered as both an employee and a dependent.

## WHEN DOES YOUR DEPENDENT COVERAGE BEGIN?

When your Employer pays 100% of the cost of your dependent coverage under a plan, your dependent will be covered at 12:01 a.m. on the date they are eligible for coverage.

## WHAT IF YOUR DEPENDENT IS TOTALLY DISABLED ON THE DATE YOUR DEPENDENT'S COVERAGE WOULD NORMALLY BEGIN?

If your eligible dependent is **totally disabled**, your dependent's coverage will begin on the date your eligible dependent no longer is totally disabled. This provision does not apply to a newborn child while dependent insurance is in effect.

## WHEN WILL CHANGES TO YOUR DEPENDENT'S COVERAGE TAKE EFFECT?

Once your dependent's coverage begins, any increased or additional dependent coverage due to a plan change requested by your Employer will take effect immediately, provided your dependent is not totally disabled. You must be in active employment or on a covered layoff or leave of absence.

If you are not in active employment due to injury or sickness, any increased or additional dependent coverage due to a plan change will begin on the date you return to active employment.

EMPLOYEE-4   (3/1/2001)

If your dependent is totally disabled, any increased or additional dependent coverage will begin on the date your dependent is no longer totally disabled.

Any decreased coverage will take effect immediately but will not affect a payable claim that occurs prior to the decrease.

## WHEN DOES YOUR DEPENDENT'S COVERAGE END?

Your dependent's coverage under the Summary of Benefits or a plan ends on the earliest of:

- the date the Summary of Benefits or a plan is cancelled;
- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the date of your death; or
- the last day you are in active employment unless continued due to a covered layoff or leave of absence or due to an injury or sickness, as described in this certificate of coverage.

Coverage for any one dependent will end on the earliest of:

- the date your coverage under a plan ends;
- the date your dependent ceases to be an eligible dependent;
- for a spouse, the date of divorce or annulment.

Unum will provide coverage for a payable claim which occurs while your dependents are covered under the Summary of Benefits or plan.

## WHAT ARE THE TIME LIMITS FOR LEGAL PROCEEDINGS?

You or your authorized representative can start legal action regarding a claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.

## HOW CAN STATEMENTS MADE IN YOUR APPLICATION FOR THIS COVERAGE BE USED?

Unum considers any statements you or your Employer make in a signed application for coverage or an evidence of insurability form a representation and not a warranty. If any of the statements you or your Employer make are not complete and/or not true at the time they are made, we can:

- reduce or deny any claim; or
- cancel your coverage from the original effective date.

We will use only statements made in a signed application or an evidence of insurability form as a basis for doing this.

Except in the case of fraud, Unum can take action only in the first 2 years coverage is in force.

If the Employer gives us information about you that is incorrect, we will:



EMPLOYEE-5   (6/1/2000) REV

- use the facts to decide whether you have coverage under the plan and in what amounts; and
- make a fair adjustment of the premium.

## HOW WILL UNUM HANDLE INSURANCE FRAUD?

Unum wants to ensure you and your Employer do not incur additional insurance costs as a result of the undermining effects of insurance fraud. Unum promises to focus on all means necessary to support fraud detection, investigation, and prosecution.

It is a crime if you knowingly, and with intent to injure, defraud or deceive Unum, or provide any information, including filing a claim, that contains any false, incomplete or misleading information. These actions, as well as submission of materially false information, will result in denial of your claim, and are subject to prosecution and punishment to the full extent under state and/or federal law. Unum will pursue all appropriate legal remedies in the event of insurance fraud.

## DOES THE SUMMARY OF BENEFITS REPLACE OR AFFECT ANY WORKERS' COMPENSATION OR STATE DISABILITY INSURANCE?

The Summary of Benefits does not replace or affect the requirements for coverage by any workers' compensation or state disability insurance.

## DOES YOUR EMPLOYER ACT AS YOUR AGENT OR UNUM'S AGENT?

For the purposes of the Summary of Benefits, your Employer acts on its own behalf or as your agent. Under no circumstances will your Employer be deemed the agent of Unum.

# LIFE INSURANCE

## BENEFIT INFORMATION

### WHEN WILL YOUR BENEFICIARY RECEIVE PAYMENT?

Your beneficiary(ies) will receive payment when Unum approves your death claim.

### WHAT DOCUMENTS ARE REQUIRED FOR PROOF OF DEATH?

Unum will require a certified copy of the death certificate, enrollment documents and a Notice and Proof of Claim form.

### HOW MUCH WILL UNUM PAY YOUR BENEFICIARY IF UNUM APPROVES YOUR DEATH CLAIM?

Unum will determine the payment according to the amount of insurance shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

### HOW MUCH WILL UNUM PAY YOU IF UNUM APPROVES YOUR DEPENDENT'S DEATH CLAIM?

Unum will determine the payment according to the amount of insurance shown in the LIFE INSURANCE **"BENEFITS AT A GLANCE"** page.

### WHAT ARE YOUR ANNUAL EARNINGS?

"Monthly Earnings" means your gross monthly income from your Employer in effect just prior to your date of disability. It includes your total income before taxes, and any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan or flexible spending account. It includes income actually received from commissions but does not include renewal commissions, bonuses, overtime pay, any other extra compensation, or income received from sources other than your Employer.

Commissions will be averaged for the lesser of:

a. Commissions are calculated using the total paid by the employer during the preceding calendar year. If the employee has not been employed a full year, the annual rate of earnings includes 12 times the average monthly commissions paid by the Employer just prior to the date disability begins, or

b. the period of actual employment with your Employer.

**Execuflex Employees**
"Monthly Earnings" means your gross monthly income from your Employer in effect just prior to your date of disability. It includes your total income before taxes, and any deductions mad for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan or flexible spending account. It includes income actually received from commissions but does not include renewal commissions, bonuses, overtime pay, any other extra extra compensation, or income received from sources other than your Employer.

LIFE-BEN-1    (6/1/2000) REV

Commissions will be averaged for the lesser of:

a. Commissions are calculated using the total paid by the employer during the preceding calendar year. If the employee has not been employed a full year, the annual rate of earnings includes 12 times the average monthly commissions paid by the Employer just prior to the date disability begins, or

b. the period of actual employment with your Employer.

## WHAT WILL WE USE FOR ANNUAL EARNINGS IF YOU BECOME DISABLED DURING A COVERED LAYOFF OR LEAVE OF ABSENCE?

If you become disabled while you are on a covered layoff or leave of absence, we will use your annual earnings from your Employer in effect just prior to the date your absence began.

## WHAT HAPPENS TO YOUR LIFE INSURANCE COVERAGE IF YOU BECOME DISABLED?

Your life insurance coverage may be continued for a specific time and your life insurance premium will be waived if you qualify as described below.

## HOW LONG MUST YOU BE DISABLED BEFORE YOU ARE ELIGIBLE TO HAVE LIFE PREMIUMS WAIVED?

You must be disabled through your **elimination period**.

Your elimination period is 12 months.

## WHEN WILL YOUR LIFE INSURANCE PREMIUM WAIVER BEGIN?

Your life insurance premium waiver will begin when we approve your claim, if the elimination period has ended and you meet the following conditions. Your Employer may continue premium payments until Unum notifies your Employer of the date your life insurance premium waiver begins.

Your life insurance premium will be waived if you meet these conditions:

- you are less than 60 and insured under the plan.
- you become disabled and remain disabled during the elimination period.
- you meet the notice and proof of claim requirements for disability while your life insurance is in effect or within three months after it ends.
- your claim is approved by Unum.

After we approve your claim, Unum does not require further premium payments for you while you remain disabled according to the terms and provisions of the plan.

Your life insurance amount will not increase while your life insurance premiums are being waived. Your life insurance amount will reduce or cease at any time it would reduce or cease if you had not been disabled.

LIFE-BEN-2   (6/1/2000) REV

## WHEN WILL YOUR LIFE INSURANCE PREMIUM WAIVER END?

The life insurance premium waiver will automatically end if:

- you recover and you no longer are disabled;
- you fail to give us proper proof that you remain disabled;
- you refuse to have an examination by a physician chosen by Unum;
- you reach age 70; or
- premium has been waived for 12 months and you are considered to reside outside the United States. You will be considered to reside outside the United States when you have been outside the United States for a total period of 6 months or more during any 12 consecutive months for which premium has been waived.

## HOW DOES UNUM DEFINE DISABILITY?

You are disabled when Unum determines that:

- during the elimination period, you are not working in any occupation due to your **injury** or **sickness**; and
- after the elimination period, due to the same injury or sickness, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by training, education or experience.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by a physician, other medical practitioner or vocational expert of our choice. Unum will pay for this examination. We can require an examination as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Unum Representative.

## APPLYING FOR LIFE INSURANCE PREMIUM WAIVER

Ask your Employer for a life insurance premium waiver claim form.

The form has instructions on how to complete and where to send the claim.

## WHAT INSURANCE IS AVAILABLE WHILE YOU ARE SATISFYING THE DISABILITY REQUIREMENTS? (See Conversion Privilege)

You may use this life conversion privilege when your life insurance terminates while you are satisfying the disability requirements. Please refer to the conversion privilege below. You are not eligible to apply for this life conversion if you return to work and, again, become covered under the plan.

If an individual life insurance policy is issued to you, any benefit for your death under this plan will be paid only if the individual policy is returned for surrender to Unum. Unum will refund all premiums paid for the individual policy.

The amount of your death benefit will be paid to your named beneficiary for the plan. If, however, you named a different beneficiary for the individual policy and the policy is returned to Unum for surrender, that different beneficiary will not be paid.

LIFE-BEN-3   (6/1/2000) REV

If you want to name a different beneficiary for this group plan, you must change your beneficiary as described in the Beneficiary Designation page of this group plan.

## WHAT INSURANCE IS AVAILABLE WHEN COVERAGE ENDS? (Conversion Privilege)

When coverage ends under the plan, you and your dependents can convert your coverages to individual life policies, without evidence of insurability. The maximum amounts that you can convert are the amounts you and your dependents are insured for under the plan. You may convert a lower amount of life insurance.

You and your dependents must apply for individual life insurance under this life conversion privilege and pay the first premium within 31 days after the date:

- your employment terminates; or
- you or your dependents no longer are eligible to participate in the coverage of the plan.

If you convert to an individual life policy, then return to work, and, again, become insured under the plan, you are not eligible to convert to an individual life policy again. However, you do not need to surrender that individual life policy when you return to work.

Converted insurance may be of any type of the level premium whole life plans then in use by Unum. The person may elect one year of Preliminary Term insurance under the level premium whole life policy. The individual policy will not contain disability or other extra benefits.

## WHAT LIMITED CONVERSION IS AVAILABLE IF THE SUMMARY OF BENEFITS OR THE PLAN IS CANCELLED? (Conversion Privilege)

You and your dependents may convert a limited amount of life insurance if you have been insured under your Employer's group plan with Unum for at least five (5) years and the Summary of Benefits or the plan:

- is cancelled with Unum; or
- changes so that you no longer are eligible.

The individual life policy maximum for each of you will be the lesser of:

- $10,000; or
- your or your dependent's coverage amounts under the plan less any amounts that become available under any other group life plan offered by your Employer within 31 days after the date the Summary of Benefits or the plan is cancelled.

## PREMIUMS

Premiums for the converted insurance will be based on:

- the person's then attained age on the effective date of the individual life policy;
- the type and amount of insurance to be converted;
- Unum's customary rates in use at that time; and
- the class of risk to which the person belongs.

LIFE-BEN-4   (6/1/2000) REV

If the premium payment has been made, the individual life policy will be effective at the end of the 31 day conversion application period.

## DEATH DURING THE THIRTY-ONE DAY CONVERSION APPLICATION PERIOD

If you or your dependents die within the 31 day conversion application period, Unum will pay the beneficiary(ies) the amount of insurance that could have been converted. This coverage is available whether or not you have applied for an individual life policy under the conversion privilege.

## APPLYING FOR CONVERSION

Ask your Employer for a conversion application form which includes cost information.

When you complete the application, send it with the first premium amount to:

Unum - Conversion Unit
2211 Congress Street
Portland, Maine 04122-1350
1-800-343-5406

## WILL UNUM ACCELERATE YOUR OR YOUR DEPENDENT'S DEATH BENEFIT FOR THE PLAN IF YOU OR YOUR DEPENDENT BECOMES TERMINALLY ILL? (Accelerated Benefit)

If you or your dependent becomes terminally ill while you or your dependent is insured by the plan, Unum will pay you a portion of your or your dependent's life insurance benefit one time. The payment will be based on 50% of your or your dependent's life insurance amount. However, the one-time benefit paid will not be greater than $250,000.

Your or your dependent's right to exercise this option and to receive payment is subject to the following:

- you or your dependent requests this election, in writing, on a form acceptable to Unum;
- you or your dependent must be terminally ill at the time of payment of the Accelerated Benefit;
- your or your dependent's physician must certify, in writing, that you or your dependent is terminally ill and your or your dependent's life expectancy has been reduced to less than 12 months; and
- the physician's certification must be deemed satisfactory to Unum.

The Accelerated Benefit is available on a voluntary basis. Therefore, you or your dependent is not eligible for benefits if:

- you or your dependent is required by law to use this benefit to meet the claims of creditors, whether in bankruptcy or otherwise; or
- you or your dependent is required by a government agency to use this benefit in order to apply for, get, or otherwise keep a government benefit or entitlement.

Premium payments must continue to be paid on the full amount of life insurance unless you qualify to have your life premium waived.

LIFE-BEN-5  (6/1/2000) REV

Also, premium payments must continue to be paid on the full amount of your dependent's life insurance.

If you have assigned your rights under the plan to an assignee or made an irrevocable beneficiary designation, Unum must receive consent, in writing, that the assignee or irrevocable beneficiary has agreed to the Accelerated Benefit payment on your behalf in a form acceptable to Unum before benefits are payable.

An election to receive an Accelerated Benefit will have the following effect on other benefits:

- the death benefit payable will be reduced by any amount of Accelerated Benefit that has been paid; and
- any amount of life insurance that would be continued under a disability continuation provision or that may be available under the conversion privilege will be reduced by the amount of the Accelerated Benefit paid.  The remaining life insurance amount will be paid according to the terms of the Summary of Benefits subject to any reduction and termination provisions.

Benefits paid may be taxable Unum is not responsible for any tax or other effects of any benefit paid.  As with all tax matters, you or your dependent should consult your personal tax advisor to assess the impact of this benefit.

## WHAT LOSSES ARE NOT COVERED UNDER YOUR PLAN?

Your plan does not cover any losses where death is caused by, contributed to by, or results from suicide occurring within 24 months after your or your dependent's initial effective date of insurance.

The suicide exclusion will apply to any amounts of insurance for which you pay all or part of the premium.

The suicide exclusion also will apply to any amount that is subject to evidence of insurability requirements and Unum approves the evidence of insurability form and the amount you or your dependent applied for at that time.

You and your dependents will be given credit toward the suicide provision for any period of time applied toward the satisfaction of the suicide provision, if any, under your Employer's prior group life insurance plan.